UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLYNNIS BLAKE,

    Plaintiff,

vs.

SEABURY & SMITH, INC., et al.,

    Defendants.

_____/

Civil Action No.
06-CV-12161

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on Defendant's Motion for Summary Judgment [docket entry 27]. On October 1, 2007, Plaintiff filed a response. Defendant filed a reply on October 15, 2007. The Court has had an opportunity to thoroughly examine the pleadings, documents, and evidence submitted by the parties in this matter. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court will decide this matter without oral argument. For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

I.     **FACTUAL BACKGROUND**

This is a case under the Family Medical Leave Act ("FMLA") and Michigan People with Disability Civil Rights Act ("PWDCRA"). Seabury & Smith, Inc. ("Defendant") is an insurance company. (Def.'s Mot. at 3.) Glynnis Blake ("Plaintiff") is a former employee of Defendant. (Am. Compl. at ¶ 11.)

Plaintiff began working for Defendant in January 2001. (*Id*. at ¶ 10.) Her

1

employment ended when she was terminated by Defendant on June 9, 2005. (*Id*. at ¶ 26.) Prior to her termination, Plaintiff took two separate periods of leave, one in 2004 and the other in 2005. (*See* Pl.'s Resp. at 10.) Plaintiff's first leave of absence took place in 2004 and was necessitated by the medical condition of her son. (*Id*.) According to Defendant, Plaintiff exhausted 186 FMLA leave hours during her 2004 leave of absence. Plaintiff, on the other hand, insists that she only exhausted 147 FMLA leave hours in 2004. (*Id*.) Both parties agree that Plaintiff returned to work in September 2004. (*Id*.)

In March 2005, Plaintiff was diagnosed with Thoracic Outlet Syndrome. (*See* Pl.'s Am. Compl. at ¶ 12.) On or about April 1, 2005, Plaintiff notified Defendant of her physician's recommendation that she take additional time off work. (*Id*. at ¶ 13.) Both parties agree that Plaintiff's 2005 medical leave of absence commenced on March 28, 2005, and lasted until she was terminated on June 9, 2005. (*See id.* at ¶ 15, 26; Def.'s Mot. for Summ. J. at 4.) However, Plaintiff argues that she did not exhaust any of her FMLA leave allotment during this period of time on the grounds that Defendant failed to properly designate her leave as FMLA leave in accordance with certain regulatory requirements under the FMLA. Defendant, on the other hand, contends that it did properly notify Plaintiff that her 2005 leave would count against her FMLA allotment, and even if the notice was technically deficient, Plaintiff would still be unable to recover because the alleged violation did not cause Plaintiff to suffer any prejudice.

Plaintiff's Amended Complaint contains two counts. In Count One, Plaintiff alleges that Defendant violated her rights under the FMLA by terminating her employment on June 9, 2005. Count Two contains a claim under the PWDCRA. Plaintiff alleges that Defendant discriminated against her by failing to provide a reasonable accommodation for her disability.

2

## II. SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has held that there are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In addition,

> [i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Thus, "[t]he moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).

Once the moving party discharges this burden, the burden then shifts to the nonmoving party. *See id.* "[T]he nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Id.* (citing FED. R. CIV. P. 56(e) and *Celotex Corp.*, 477 U.S. at 324). Indeed, the nonmoving party "must present significant probative evidence in support of its opposition to the motion for summary judgment in order to

3

defeat the motion for summary judgment." *Id*. "When reviewing a motion for summary judgment, [the court] must draw all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

III.     **PLAINTIFF'S CLAIM UNDER THE FAMILY MEDICAL LEAVE ACT**

"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). However, according to the United States Supreme Court, even if an employer interferes with, restrains, or denies an employee's rights under the FMLA, the employee must still establish that he or she has been prejudiced by the violation in order to recover:

> [t]o prevail under the [FMLA], an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, [the FMLA] provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). More specifically, to bring a successful claim under the FMLA, the Sixth Circuit has held that

> a plaintiff must show (1) that she engaged in conduct protected by the Act, (2) that the defendant was aware of this exercise of protected rights, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 450-51 (6th Cir. 2005) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

4

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . ." 29 U.S.C. 2612(a)(1). This translates into 480 hours of FMLA leave. An eligible employee who takes FMLA leave is, upon return from such leave, ordinarily entitled to be restored to her position or an equivalent position. *See* 29 U.S.C. § 2614(a)(1). However, as Defendant points out, this court has previously held that

> [t]here is no right to reinstatement . . . if the employee is unable to return to work at the end of [his or] her 12-weeks of allotted FMLA time. 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."); *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784 (6th Cir. 1998); *see also Manns v. ArvinMeritor, Inc.*, 291 F.Supp.2d 655, 659 (N.D. Ohio 2003) (once an employee exceeds his twelve weeks (or sixty workdays) of FMLA leave, additional leave is not protected by the FMLA and the termination of the employee will not violate the FMLA); *Hicks v. Leroy's Jewelers, Inc.*, 225 F.3d 659, 2000 WL 1033029 *5 (6th Cir. 2000), *cert. denied*, 531 U.S. 1146, 121 S.Ct. 1084, 148 L.Ed.2d 959 (2001) (an employee who cannot return to work at the end of the approved leave is not entitled to job restoration).

*Dortman v. ACO Hardware, Inc.*, 405 F. Supp.2d 812, 821 (E.D. Mich. 2005).

Plaintiff alleges that she was terminated from her position with Defendant before she exhausted her statutory FMLA leave entitlement. If this is true, her termination on June 9, 2005, would violate the FMLA. Defendant, on the other hand, insists that Plaintiff was terminated when she failed to return to work *after* she had exhausted her 12-week FMLA leave allotment. If Defendant is correct that Plaintiff was terminated after she exhausted her FMLA leave entitlement, Plaintiff would be unable to establish that at the time of her discharge, she was engaged in conduct protected by the FMLA, and her FMLA claim would fail. Because "[t]here is no right to reinstatement . . . if the employee is unable to return to work at the end of her 12-weeks of allotted

5

FMLA time," the viability of Plaintiff's FMLA claim hinges on whether Plaintiff had exhausted her FMLA leave allotment at the time she was terminated on June 9, 2005. *See Dortman*, 405 F. Supp.2d at 821 (citing 29 C.F.R. § 825.214(b)). The parties disagree over how many FMLA leave hours Plaintiff exhausted over the course of 2004 and 2005. This issue is crucial in determining whether Plaintiff was still protected by the FMLA at the time of her termination.

With respect to the 2004 leave period, Defendant argues that Plaintiff exhausted 186 hours of her 480-hour FMLA leave entitlement. Plaintiff, on the other hand, contends that she only exhausted 147 hours of FMLA leave during 2004. For the reasons discussed in footnote one, below, the Court need not resolve this dispute. Either way, Plaintiff's FMLA claim fails.

With respect to Plaintiff's 2005 leave, Defendant contends that Plaintiff's FMLA leave period began on March 28, 2005, and continued until her leave entitlement was exhausted on May 17, 2005.[1] According to Defendant, because Plaintiff exhausted all of her FMLA leave prior to her termination on June 9, 2005, Defendant cannot be liable under the FMLA since additional leave beyond the 12-week statutory allotment is not protected by the FMLA and thus any termination occurring after Plaintiff exhausted her 12-week FMLA leave entitlement cannot violate the FMLA. (*See* Def.'s Mot. for Summ. J. at 8-9.)

On the other hand, Plaintiff argues that she did not exhaust *any* FMLA leave in 2005

---

[1] If Plaintiff is correct that she only exhausted 147 hours of FMLA leave in 2004—and not 186 hours as Defendant contends—her FMLA leave entitlement would have expired on or about May 24, 2005, instead of on May 17, 2005 (i.e., Plaintiff would have had 333 hours of FMLA leave available to use instead of 294, a difference of 39 hours, or approximately five work days). Both May 17, 2005, and May 24, 2005, fall before Plaintiff was terminated on June 9, 2005. Therefore, the dispute over how many FMLA hours were exhausted in 2004 does not matter because even if Plaintiff is correct that she only exhausted 147 hours of FMLA leave in 2004, she was still beyond her statutory allotment of 480 hours when she was terminated.

because Defendant never formally designated Plaintiff's absence as FMLA leave. (Pl.'s Resp. at 10-11.) Consequently, Plaintiff contends that she was terminated on June 9, 2005, without having exhausted her FMLA leave entitlement, and therefore in violation of her FMLA rights.

Plaintiff relies primarily on two Code of Federal Regulations provisions—29 C.F.R. §§ 825.301(b)(1) and 825.208(c)—and a Sixth Circuit case, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929 (6th Cir. 2000), in support of her position that she was terminated on June 9, 2005, while protected under the FMLA. (*See* Pl.'s Resp. at 10-12.) The Court finds that Defendant appears to have complied with these authorities by prospectively affording Plaintiff notice that her absence would count against her FMLA leave allotment. However, even if Defendant failed to technically comply with the FMLA's notice provisions, Plaintiff would still be unable to recover because she has not established that Defendant's alleged violation of the FMLA's notice provisions caused her prejudice, as expressly required under the Supreme Court's holding in *Ragsdale*.

Title 29, section 825.301(b)(1) of the Code of Federal Regulations reads, in relevant part,

> [t]he employer shall . . . provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations . . . . Such specific notice must include, as appropriate: (i) that the leave will be counted against the employee's annual FMLA leave entitlement (see § 825.208); (ii) any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so (see § 825.305) . . . .

Plaintiff also relies on 29 C.F.R. § 825.208(c). This regulation states, in relevant part,

> [i]f the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two business days of the time the employee gives notice of the need for leave, or, where the employer does not initially have sufficient information to make a determination, when

7

the employer determines that the leave qualifies as FMLA leave if this happens later. The employer's designation must be made before the leave starts, unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph (b)), the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week FMLA leave entitlement.

Finally, Plaintiff relies on the *Plant* case. In *Plant*, the Sixth Circuit held that when an employer fails to properly notify its employee that it will be counting the employee's paid leave of absence against his statutory FMLA allowance, the employee's 12-week statutory FMLA leave entitlement does not start to run. *See* 212 F.3d at 934. The *Plant* court made clear that the legal basis for this holding was 29 C.F.R. § 825.208(c), stating that "we believe that regulation to be valid." *Id.*

Plaintiff contends that Defendant failed to fulfil its obligations under 29 C.F.R. §§ 825.301(b)(1) and 825.208(c), as interpreted by the Sixth Circuit in *Plant*. In particular, Plaintiff maintains that Defendant failed to give her prospective notice that Defendant would be counting her absence in 2005 against her FMLA allowance, and instead retroactively labeled her leave in 2005 as FMLA leave in violation of 29 C.F.R.§§ 825.301(b)(1)(i) and 825.208(c).[2] (*See* Pl.'s Resp. at 10-

---

[2] In support of her argument that Defendant retroactively designated her leave as FMLA leave in violation of 29 C.F.R.§§ 825.301(b)(1)(i) and 825.208(c), Plaintiff cites an excerpt from a chain email between Carolyn Sosnowski, Plaintiff's immediate supervisor, and Lori Tassin, Defendant's Human Resources Administrator. (*See* Pl.'s Resp. at 12.) The emails state, in pertinent part,

8

12.). Defendant disagrees. According to Defendant, its March 29, 2005, letter and accompanying documentation sent to Plaintiff, by Lori Tassin, satisfies any notice requirements under the FMLA. The letter to which Defendant refers is dated just one day after Plaintiff's FMLA leave purportedly began. The letter states, in relevant part, "[t]his time may qualify for protection under the federal Family Medical Leave Act ("FMLA") and, upon presentation of appropriate documentation, will be counted toward your 12-week unpaid leave entitlement under the FMLA." (Def.'s Reply at Ex. A.) Apparently, Plaintiff deems this notice insufficient because it is contingent upon the "presentation of appropriate documentation."

The Court finds that Defendant's March 29, 2005, letter and accompanying documentation provided Plaintiff with sufficient notice under 29 C.F.R. §§ 825.301(b)(1) and 825.208(c). The letter specified what documentation Plaintiff needed to file in order for her absence to be deemed FMLA-qualifying, and advised Plaintiff that upon returning the documentation, her leave "will" be FMLA-qualifying. Defendant's March 29, 2005, letter informed Plaintiff that she

---

> Just to confirm that if this does eventually get approved for FMLA, then does Glynnis exhaust her available FMLA hours as of 5/19?
>
> Yes, her FMLA is up on 5/19, <u>if it is approved for FMLA and Disability</u>.

(Pl.'s Resp. at Ex. 9) (emphasis added). This conversation took place on May 18, 2005. Plaintiff asserts that the underlined portion of the conversation indicates that as of May 18, 2005, Defendant had not yet designated Plaintiff's leave as FMLA leave, and therefore all leave taken before May 18, 2005, could not count against her FMLA leave allotment in accordance with 28 C.F.R. § 825.208(c).

Plaintiff also relies on a letter that she received from her employer dated March 31, 2005. This letter sets forth Defendant's policy regarding its short-term disability program and FMLA leave. (*See* Pl.'s Resp. at Ex. 1.) The letter states that Plaintiff's leave "will" be covered under Defendant's short-term disability program and "may" qualify as FMLA leave. Plaintiff points out that Defendant "never provided confirmation that her condition was FMLA qualifying" in violation of the above-quoted C.F.R. provisions. (*See id*. at 11.)

9

need only file certain paperwork in order for her leave to qualify as FMLA leave. Therefore, Defendant appears to have substantially complied with sections 825.301(b)(1) and 825.208(c).

However, even if Defendant failed to technically comply with the FMLA's notice provisions, Plaintiff's claim under the FMLA would still fail because she has not demonstrated that she suffered any prejudice as a result of Defendant's alleged technical violation. In *Ragsdale*, the United States Supreme Court held that an employee has no remedy for his or her employer's technical violation of the FMLA's notice requirements if the employee received all of the FMLA leave to which he or she was entitled. 535 U.S. at 88-89.[3] The only exception to this rule occurs where the employee can show that the lack of notice caused some prejudice. *See id.* Because

---

[3] The Court's holding expressly invalidated only 29 C.F.R. § 825.700(a), which states, in relevant part, "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." However, the lower courts have routinely recognized that the Supreme Court's holding with respect to section 825.700(a) applies with equal force to invalidate section 825.208(c) and overrule *Plant*, since both .208(c) and *Plant*, too, forbid an employer from retroactively designating an employee's absence as counting against the employee's FMLA leave allotment. *See e.g., Sims v. Schultz*, 305 F. Supp.2d 838, 845 (N.D. Ill. 2004) (recognizing that 825.208's validity "may fairly be questioned after *Ragsdale*"); *Donahoo v. Master Data Ctr.*, 282 F. Supp.2d 540, 554-556 (E.D. Mich. 2003) (finding that section 825.700(a)'s notice provisions are almost identical to those in section 825.208, and that the reasoning and holding of the *Ragsdale* Court "should apply equally" to a plaintiff proceeding under section 825.208); *Roberson v. Cendant Travel Servs., Inc.*, 252 F. Supp.2d 573, 577 (M.D. Tenn. 2002) (recognizing that section 825.208's status "is tenuous at best"); *Summers v. Middleton & Reutlinger, P.S.C.*, 214 F. Supp.2d 751, 757 (W.D. Ky. 2002) (concluding that the United States Supreme Court, in *Ragsdale*, invalidated the basis for the plaintiff's argument that her employer violated the FMLA by retroactively designating her leave as FMLA leave); *Brown v. Dollar General Stores, Ltd.*, 2006 WL 448880, at *4 (W.D. Ky. Feb. 21, 2006) ("join[ing] those other courts which have concluded that 29 C.F.R. § 825.208 is invalid"); *Phillips v. Leroy-Somer N. Am.*, 2003 WL 1790941, at *7 (W.D. Tenn. Mar. 28, 2003) ("conclud[ing] that plaintiff's reliance on § 825.208(c) is foreclosed by the decision in *Ragsdale*"); *Thompson v. Diocese of Saginaw*, 2004 WL 45519, at *6 (E.D. Mich. Jan. 6, 2004) (finding that "the force of 29 C.F.R. § 825.208(a) & (c) and the authority of *Plant* has been undercut by the Supreme Court's decision in *Ragsdale*"); *Wilson v. AZ Automotive Corp.*, 2007 WL 1017097, at *4 (E.D. Mich. Mar. 30, 2007) (stating that "29 C.F.R. § 825.208 is invalid").

Plaintiff received all of the FMLA leave to which she was entitled before her termination on June 9, 2005, she would have to demonstrate that Defendant's lack of notice caused her some sort of prejudice in order to recover under the FMLA. Plaintiff has failed to make this showing.

This court has recently explained,

> [a] plaintiff must . . . show that she was "somehow prejudiced by Defendant's failure to designate her disability leave as FMLA leave [for] Defendant [to] be liable for not giving her proper notice." In *Donahoo*, this Court held that since the undisputed evidence establishes that Plaintiff was physically unable to return to work after twelve weeks, Plaintiff cannot demonstrate prejudice because even if Defendant had properly notified her when her FMLA leave began, she would have been unable to resume work.

*Wilson*, 2007 WL 1017097, at *4 (internal citations omitted) (quoting *Donahoo*, 282 F. Supp.2d at 555). The *Wilson* court then proceeded to analyze whether the plaintiff in that case had submitted sufficient evidence to demonstrate that she was able to return to work at the end of her FMLA leave allotment. *See id.* After concluding that the plaintiff had not done so, the court proceeded to grant the defendant's motion for summary judgment on the plaintiff's FMLA claim. *See id.* at *7.

Just as the plaintiff in *Wilson* failed to submit sufficient evidence that she could return to work at the end of the FMLA leave period, so too is the case here. In fact, Plaintiff testified in her deposition that she could not have returned to work at any point prior to June 23, 2005:

> Q: I'm talking about the time period from March 28th, 2005 until June 23rd, 2005, during that time period you couldn't have worked at Seabury & Smith even with restrictions; right?
>
> A: That's correct.

(Blake Dep., Def.'s Mot. for Summ. J. at Ex. 7, p. 40.) As noted above, Plaintiff exhausted her

FMLA leave either on May 17, 2005, or May 24, 2005, depending upon how many FMLA leave hours Plaintiff exhausted in 2004. In her deposition, Plaintiff stated that she was unable to return to work before June 23, 2005. Therefore, Plaintiff cannot show prejudice because the undisputed evidence establishes that Plaintiff was physically unable to return to work when her FMLA leave expired. Consequently, even in the event that Defendant failed to afford Plaintiff prospective notice that her leave would count against her FMLA allotment—a finding that the Court considers doubtful— Plaintiff would have been unable to resume work as of May 17, 2005, or May 24, 2005. Because Plaintiff has not demonstrated that she suffered any prejudice as a result of any possible violation of the FMLA's notice provisions, her FMLA claim must fail. Defendant's Motion for Summary Judgment as to Count One of Plaintiff's Complaint must therefore be granted.

IV. **PLAINTIFF'S CLAIM UNDER THE MICHIGAN PEOPLE WITH DISABILITY CIVIL RIGHTS ACT**

Defendant, in its Motion for Summary Judgment, argues that there are no genuine issues of material fact as to Plaintiff's claim under the PWDCRA. (Def.'s Mot. for Summ. J. at 11-13.) Plaintiff disagrees. "The plaintiff bears the burden of proving a violation of the PWDCRA." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004). An employer cannot "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS § 37.1202(b). According to the Michigan Supreme Court, "'unrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position." *Peden*, 680 N.W.2d at 863.

The Michigan Supreme Court has also held that

> [t]o prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute.

*Peden*, 680 N.W.2d at 863 (quoting *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998)). Defendant contends that there is no triable issue as to the second element of the test. Defendant maintains that Plaintiff has admitted that she could not have performed her job duties on the date of her discharge, with or without accommodation. (Def.'s Mot. for Summ. J. at 12.) In support of this argument, Defendant cites Plaintiff's deposition testimony:

> Q: Would you have been able to perform the – the duties, the tasks associated with your position at Seabury & Smith on June 9th, 2005?
>
> A: I wouldn't have been able to perform the duty nor the tasks on June 9th of 2005.
>
> Q: Why not?
>
> A: I wasn't capable, physically I was not capable.
>
> Q: Is there any accommodation that Seabury & Smith could have offered you that would have allowed you to perform your job on June 9th, 2005?
>
> A: No, there wouldn't have been.

(Blake Dep., Def.'s Mot. for Summ. J. at Ex. 7, p. 150.) Given this deposition testimony, the Court must grant Defendant's Motion for Summary Judgment as to Plaintiff's PWDCRA claim. Plaintiff appears to argue that she could have performed her job duties at some point after her discharge if

Defendant acknowledged her medical limitations. (Pl.'s Resp. at 17.) However, as Defendant points out, Michigan law is clear that "[i]f an individual was physically incapable of performing the duties of his [or her] job at the time he [or she] was discharged, summary disposition of his [or her] PWDCRA claim is proper." *Carpenter v. Snacktime Servs., Inc.*, 2005 WL 763308, at *6 (Mich. Ct. App. Apr. 5, 2005) (citing *Carr v. General Motors Corp.*, 389 N.W.2d 686, 689-690 (Mich. 1986) and *Bowerman v. Malloy Lithographing, Inc.*, 430 N.W.2d 742, 745 (Mich Ct. App. 1988)). Because Plaintiff's deposition testimony unequivocally demonstrates that her medical condition prevented her from performing her job duties at the time of her discharge, Plaintiff's disability was related to her ability to perform her job duties. Summary judgment on Plaintiff's PWDCRA claim is therefore appropriate. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: November 20, 2007
       Detroit, Michigan